Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Brandon Minnis*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Brandon Minnis,<br><br>   Plaintiff,<br><br>  v.<br><br>Aetna Life Insurance Company; Bank of America Corporation; Bank of America Corporation Long Term Disability Plan,<br><br>   Defendants. | Case No.<br><br>**COMPLAINT** |

  Now comes the Plaintiff Brandon Minnis (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

## *Jurisdiction*

  1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant Bank of America Corporation (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy (hereinafter referred to as the "Policy") which was fully insured by Aetna Life Insurance Company (hereinafter referred to as "Aetna"). The specific group disability policy is known as Group Policy No.: GP-811383. The Company's purpose in purchasing the Policy was to provide disability insurance for its employees.

4. Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the Bank of America Corporation Long Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.

5. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

6. Upon information and belief, Aetna functioned as the claim administrator of the Plan and Policy. However, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Aetna.

7. Aetna operated under a financial conflict of interest in administering Plaintiff's long-term disability claim because it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

8. Aetna's financial conflict of interest existed and manifested in that if it found Plaintiff was disabled, it was then liable for the payment of his long-term disability benefits.

9. The Company, Aetna and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

10. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

11. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7).

12. Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits he may be entitled to from the Plan, any other Company Plan and/or the Company as a result of being found disabled in this action.

13. After working for the Company as a loyal employee in the occupation of a Loan Officer, Plaintiff became disabled from working in that occupation, and also in any occupation, on or about August 17, 2010. Plaintiff has remained continuously totally disabled from working in any occupation since that date due to his serious medical conditions.

14. Following the onset of his disability, Plaintiff filed a claim for short-term disability benefits, and those benefits have all been paid and have been exhausted.

15. Following the exhaustion of his short-term disability claim/benefits, Plaintiff then filed his claim for long-term disability benefits under the relevant Policy, which was administered by Aetna. Aetna made every decision in Plaintiff's long-term disability claim.

16. Upon information and belief, the relevant Aetna Policy's definition of disability governing Plaintiff's long-term disability claim is as follows:

Test of Disability

> "From the date that you first become disabled and until Monthly Benefits are payable for 18 months, you will be deemed to be disabled on any day if:
>
> - You are not able to perform the material duties of your own occupation solely because of: disease or injury; and
> - Your work earnings are 80% or less of your adjusted predisability earnings.
>
> After the first 18 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any reasonable occupation solely because of:
>
> - Disease; or
> - Injury."

17. In support of his claim for long-term disability benefits, Plaintiff submitted to Aetna medical, vocational, lay-witness and other evidence which supported his allegation that he met any definition of disability defined in the relevant Policy.

18. Aetna approved Plaintiff's long-term disability claim and consistently paid him long-term disability benefits without interruption, from February 18, 2011 through April 7, 2017.

19. During the period of time Plaintiff's long-term disability claim was approved and he was receiving disability benefits from Aetna, he applied for, was approved and is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

20. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may exist in the national economy as of August 31, 2010, the same timeframe of disability as in Plaintiff's Aetna long-term disability claim.

21. SSA's definition of disability (i.e. Plaintiff must be disabled from any occupation) is similar to the "Any Reasonable Occupation" definition of disability in the Aetna Policy.

22. Therefore, SSA's review and approval of Plaintiff's SSA claim, and the fact that the SSA has continued to pay Plaintiff's SSA benefits for *almost 8 years,* is relevant conflict of interest evidence for this Court to consider with regard to the unreasonableness and unlawfulness of Aetna's contrary decision, which was to terminate Plaintiff's long-term disability benefits.

23. Despite the objective medical, vocational and lay-witness evidence supporting Plaintiff's claim for long-term disability benefits under the relevant Policy, and after Aetna found that Plaintiff was disabled and unable to work in any occupation for 6 years, without any medical evidence to suggesting that his medical conditions had improved in any manner, Aetna reviewed Plaintiff's claim and required him to attend a medical examination with a physician that it chose, Jon D. Zoltan, M.D.

24. Plaintiff asserts Dr. Zoltan is a long time medical consultant for Aetna, and/or the insurance industry, including many disability insurance companies. As a result, Dr. Zoltan has a conflict of interest and incentive to protect his own consulting relationships with Aetna, and/or the insurance industry and/or the other insurance companies by providing medical examination reports which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and that unreasonably supported the denial of Plaintiff's claim.

25. After a superficial examination with Dr. Zoltan, who Plaintiff asserts is regularly retained by the insurance industry, Aetna's physician opined Plaintiff was able to engage in a gainful occupation and was not disabled. Dr. Zoltan's medical examination of Plaintiff consisted of a ***total of approximately thirty (30) minutes*** of face-to-face time. Of this total time, Dr. Zoltan spent only twenty (20) minutes actually physically examining Plaintiff.

26. Based on Dr. Zoltan's opinions, in a letter dated April 7, 2017, Aetna notified Plaintiff it was terminating his long-term disability benefits beyond that date.

27. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Aetna's April 7, 2017 termination of his benefits and submitted additional medical, vocational, lay-witness and other evidence supporting his appeal and his allegation that he is disabled, that there had been no medical improvement in his disabling medical conditions or his ability to work in any occupation and that he also met any definition of disability in the Policy.

28. Plaintiff submitted to Aetna a September 15, 2017 narrative letter authored by his long-time board certified treating physician who opined, "…based on my treatment of [Plaintiff] and my review of his medical records, it is my medical opinion that [Plaintiff] has been unable to work in any occupation from the time he was placed on disability and through the time when Aetna terminated his benefits…I feel that unfortunately this will remain the case for the foreseeable future, most likely indefinitely."

29. In response to the medical examination report authored by Dr. Zoltan, Plaintiff's board certified treating physician concluded, "While I respect Dr. Zoltan's opinion, I feel that stronger consideration should be given to the Functional Capacity Evaluations that have been done, as well as my findings over the past several years…unfortunately, [Plaintiff's] physical limitations preclude him from [returning to work] on an ongoing and consistent basis."

30. As referenced by Plaintiff's treating physician, Plaintiff also submitted to Aetna a Functional Capacity Evaluation report dated June 7, 2017, wherein after an extensive several hour clinical interview and physical examination, a qualified physical therapist concluded, "…[Plaintiff] would be physically unable to perform any work including a job description at the ***sedentary work level*** on a full-time basis." (Original emphasis).

31. Further supporting his claim, Plaintiff submitted a Vocational Assessment from a certified vocational expert dated September 25, 2017, who after interviewing Plaintiff and reviewing the relevant evidence in Plaintiff's claim, along with the "Any

-6-

Reasonable Occupation" definition of disability set forth in the Policy concluded, "Thus, it is my professional opinion to a reasonable degree of vocational probability that [Plaintiff] is totally disabled…and should be granted benefits because he meets the Aetna Policy's definition of disability for any occupation."

32. Plaintiff also submitted updated medical records from each of his treating medical professionals and a list of his current medications, as well as the side effects they cause and the significant negative impact they have on his ability to work in any occupation or in any work environment.

33. Plaintiff also submitted to Aetna five (5) sworn affidavits authored by himself, his mother, step-mother and two long-time friends, who all confirmed Plaintiff is unable to work in any occupation and that his disabling medical conditions had not improved in any meaningful way since the date he originally became disabled.

34. As part of its review of Plaintiff's claim for long-term disability benefits, Aetna obtained two (2) medical records only "paper review" from medical professionals of its choosing, Dr. Philip J. Marion and Dr. Maha Younes.

35. Upon information and belief, Plaintiff asserts Drs. Marion and Younes are long time medical consultants for Aetna and/or the disability insurance industry. As a result, Drs. Marion and Younes have conflicts of interest and incentives to protect their own consulting relationships with Aetna, and/or the disability insurance industry by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and that unreasonably supported the denial of Plaintiff's claim.

36. Plaintiff further asserts that pursuant to the relevant ERISA regulation, 29 C.F.R. § 2560.503-1(h)(3), Dr. Marion was not an appropriate medical professional to conduct a review of his claim, because he did not have the appropriate medical expertise,

training and/or credentials to adequately review all of Plaintiff's physical disabling diagnoses.

37. In having Dr. Marion review Plaintiff's claim, rather than an appropriate medical professional who had the relevant medical expertise to do so, Aetna violated ERISA 29 C.F.R. § 2560.503-1(h)(3). As a result of Aetna retaining and relying on Dr. Marion's review to deny Plaintiff's claim, Aetna failed to provide a "full and fair" review pursuant to ERISA.

38. In response to Dr. Marion's medical records only "paper review," Plaintiff submitted to Aetna a December 18, 2017 response letter from the physical therapist who physically examined him and authored the June 7, 2017 Functional Capacity Evaluation report. Following a review of Dr. Marion's November 22, 2017 report and his own June 7, 2017 Functional Capacity Evaluation, the physical therapist opined, "Based on review of medical records, my observation, the results of my objective FCE, [Plaintiff's] testing performance and review of Dr. Marion's report, it is my professional opinion that to a reasonable degree of medical probability, [Plaintiff] would be physically unable to perform any work including a job description at the ***sedentary work level*** on a full-time basis."

39. In Aetna's final denial letter dated February 14, 2018, notwithstanding Plaintiff's aforementioned evidence which clearly proved he met and continues to meet the "Any Reasonable Occupation" definition of disability in the Policy and that his disabling medical condition had not improved in any meaningful way, Aetna notified him that it had again denied his claim for long-term disability benefits beyond April 7, 2017.

40. In its denial letter dated February 14, 2018, Aetna notified Plaintiff he had exhausted his administrative levels of review and that he could file a civil action lawsuit in federal court pursuant to ERISA.

41. Aetna's February 14, 2018 final denial letter is clear evidence that it breached its ERISA fiduciary duty to Plaintiff and failed to provide a "full and fair review," as

required by ERISA. During its review, Aetna either negligently or intentionally committed numerous ERISA procedural violations as identified herein which then allowed Aetna to deny Plaintiff's claim, even though ERISA's regulations were enacted to protect individual's rights, such as Plaintiff's.

42. Aetna's ERISA violations include but are not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that he met the "Any Reasonable Occupation" definition of disability in the Policy.

43. In evaluating Plaintiff's claim on appeal, Aetna owed him a fiduciary duty and had an obligation pursuant to ERISA to administer it, "solely in [his] best interests and other participants" which it failed to do. [1]

44. Aetna failed to adequately fully and fairly investigate, and failed to engage Plaintiff in a dialogue during the appeal of his claim with regard to what evidence was necessary so Plaintiff could perfect his claim/appeal in order to prove that he is disabled as that term is defined in the Policy. Aetna's failure to fully and fairly investigate the claim and to engage in this dialogue, and failure to ask for and/or obtain the evidence it believed was necessary and critical to cure any deficiencies so Plaintiff could perfect his claim, is particularly egregious given the nature and severity of Plaintiff's disabling medical conditions. Aetna's failure to engage in a dialogue is evidence that its denial of Plaintiff's claim was motivated by its financial conflict of interest, it is also an ERISA procedural

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

1 violation which violates Ninth Circuit case law and evidence that he did not receive a "full and fair" review.

45. Plaintiff asserts Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; by failing to have Plaintiff examined and his claim reviewed by truly independent and unbiased medical professionals; by failing to have Plaintiff's claim reviewed by an appropriate medical professional who had relevant medical expertise and training as required by ERISA 29 C.F.R. § 2560.503-1(h)(3), 3(iii); by failing to obtain a Functional Capacity Evaluation, when the Policy allowed for one and Plaintiff's disabling medical conditions and functional work limitations could not be easily understood with only a medical records "paper review" and a medical evaluation, which raises legitimate questions about the thoroughness and accuracy of its review and denials; by conducting a biased and one sided review of Plaintiff's claim that failed to consider all the evidence submitted by him and/or by de-emphasizing medical and other evidence which supported Plaintiff's claim; by disregarding and/or failing to consider Plaintiff's disabling subjective and self-reported complaints/symptoms/limitations; by failing to consider the combined effect that all of his medical conditions and resulting limitations documented in his medical, vocational and lay-witness evidence would have on his ability to work in any occupation; by failing to engage Plaintiff in a dialogue so he and his medical professionals could submit the necessary evidence to perfect his claim so he could prove he is "Disabled" from "Any Reasonable Occupation," as those terms are defined in the Policy, and by failing to consider the impact the significant negative side effects that Plaintiff's medications would have on his ability to engage in any occupation.

46. Plaintiff asserts a reason Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its financial conflict of interest which manifested as a result of the dual roles Aetna

undertook as the decision maker and the payor of benefits. Aetna's conflict of interest provided it with a financial incentive to deny Plaintiff's long-term disability claim.

47. Aetna's conflict of interest manifested when it denied Plaintiff's claim. Aetna's decision to terminate Plaintiff's benefits resulted in it saving *over a million dollars* in disability benefits that it did not have to pay Plaintiff, even though he is legally entitled to them.

48. Plaintiff is entitled to discovery regarding Aetna's conflicts of interest referenced herein, as well as of any third party vendor hired by Aetna, and of any medical professional retained by a third party vendor to review Plaintiff's claim. In addition, Plaintiff is entitled to discovery regarding the conflicts of interest of *any* individual, medical professional or otherwise, who reviewed his medical evidence or his claim.

49. The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or any ERISA procedural violation which may have impacted or influenced Aetna's decision to deny his long-term disability claim.

50. The standard of review for this Court to apply is *de novo* as the Aetna Policy does not contain discretionary language.

51. In denying his claim, Plaintiff alleges Aetna failed to provide a full and fair review pursuant to ERISA, and that its denial of his long-term disability claim and benefits beyond April 7, 2017 is a *de novo* wrong decision, because his evidence proves that he met the "Any Reasonable Occupation" definition of disability set forth in the Policy.

52. If the Court concludes the Policy confers discretion and the standard of review is for abuse of discretion, Plaintiff asserts that Aetna's decision which resulted from its financial conflict of interest and its numerous unlawful ERISA violations as referenced herein, constitutes an abuse of discretion. Plaintiff also asserts that in denying his claim, Aetna did not provide a "full and fair" review as required by law and its ERISA violations

are so flagrant they justify *de novo* review.  Regardless of the standard of review, Plaintiff is entitled to discovery regarding the conflicts of interest, bias and ERISA procedural violations referenced herein.

53. As a direct result of Aetna's decision to deny Plaintiff's disability claim, he has been injured and suffered damages in the form of lost long-term disability benefits in addition to other potential non-disability employee benefits he may be entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled in this matter.  Plaintiff believes that other potential non-disability employee benefits may include but not be limited to, health insurance (coverage) and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for him and his family/dependents.  Plaintiff seeks any and all employee benefits, and/or any other benefits he may be due from Defendants as a result of being found disabled in this matter.

54. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

55. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for the losses he has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order finding the evidence in Plaintiff's claim is sufficient to prove he met and continues to meet the "Any Reasonable Occupation" definition of disability set forth in the relevant Plan and/or Policy and that he is entitled to disability benefits, and any other non-disability employee benefits that he may be entitled to as a result of

that Order, from the date he was first entitled to but denied these benefits through the date of judgment with prejudgment interest thereon;

     B.    For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such a time as he meets the conditions for the termination of benefits;

     C.    For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

     D.    For such other and further relief as the Court deems just and proper.

DATED this 17th day of April, 2018.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff